UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

BRADFORD V. CORDER,

      Plaintiff,

v.                         Civil Action No. 2:10-0738

COUNTRYWIDE HOME LOANS, INC., n/k/a
BANK OF AMERICA, N.A., BAC HOME LOANS
SERVICING, INC., formerly known as
Countrywide Home Loans Servicing,
Inc., and FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

      Pending is the motion to dismiss of Countrywide Home

Loans, Inc. ("Countrywide"), BAC Home Loans Servicing, Inc.

("BAC"), and Federal National Mortgage Association ("FNMA")

(collectively, "defendants"), filed June 28, 2010.

I.  Background

      Plaintiff Bradford Corder ("Corder") is a West Virginia

resident.  (Compl. ¶ 2).  Countrywide is a New York corporation

with its principal place of business in California.  (Not. of

Remov. ¶ 2).  BAC is a Texas limited partnership with its

principal place of business in Texas.  (<u>Id.</u> ¶ 3).  FNMA is a

private company with a congressional charter to make home

mortgage loans and its corporate headquarters are in Washington, D.C.  (Compl. ¶ 4).

In September 2002, Corder purchased a home located at 5429 Hillbrook Drive, Cross Lanes, West Virginia (the "property").  (Id. ¶ 5).  To purchase the property, Corder obtained a loan from Countrywide with a final indebtedness of $186,500.  (Id.).  Countrywide increased the indebtedness secured by Corder's home to $189,745 by written agreement in 2007.  (Id. ¶ 6).  Following a divorce, in or around January 2010, Corder submitted a loan modification request to the servicer of the loan, BAC.  (Id. ¶ 7).  On March 11, 2010, a BAC employee telephoned Corder to inform him that his loan modification had been approved and that BAC was sending him a loan modification package.  (Id. ¶ 8).

Corder defaulted on his loan.[1]  (See id. ¶ 9).  Seeking to avoid foreclosure, Corder signed the modification agreement prepared by BAC, paid the "initiation" fee of $1,772, and

---

[1]     The court is left to guess when exactly Corder defaulted on his loan.  In his complaint, Corder states only that he was "[d]esperate to avoid foreclosure" when he entered into the loan modification agreement -- he does not state when he stopped making his loan payments.  However, because the precise timing of Corder's default turns out to be immaterial to the resolution of this motion, the court need not discuss the matter further.

returned it to BAC on March 15, 2010.  (Id. ¶ 9).  A BAC employee
verbally confirmed receipt of the signed modification agreement
and initiation fee on March 16, 2010.  (Id. ¶ 10).  The BAC
employee also informed Corder that it was providing him with a
loan modification instead of pursuing foreclosure.  (Id. ¶ 40).
Nevertheless, on the next day, March 17, 2010, BAC proceeded to
foreclose on the property.  (Id. ¶ 11).


                              II.


          Corder instituted this action in the Circuit Court of
Kanawha County on April 13, 2010.  Defendants removed this action
to federal court on May 13, 2010, based on diversity
jurisdiction.  Corder asserts six counts in his complaint, most
of which are based on the allegation that BAC assured Corder it
had approved his loan modification, but nonetheless proceeded to
foreclose on the property during the loan modification process.
(See generally Compl.).

          The first four Counts allege claims only against BAC.
Count I is a breach of contract claim.  (Id. ¶¶ 13-21).  Count II
is a fraud claim.  (Id. ¶¶ 22-29).  Count III is a negligent
misrepresentation claim.  (Id. ¶¶ 30-38).  Count IV is an

                              3

estoppel claim.  (<u>Id.</u> ¶¶ 39-43).

Count V is simply a request for appropriate equitable relief and appears to be made as to all defendants.  (<u>Id.</u> ¶¶ 44-46).  Count VI is also asserted against all defendants and alleges that the original loan agreement contained unconscionable terms and was induced by unconscionable conduct.  (<u>Id.</u> ¶¶ 47-53).  Corder requests actual and punitive damages, equitable relief, declaratory relief, and attorneys' fees.  (<u>See</u> <u>generally</u> <u>id.</u>).

On June 28, 2010, defendants moved to dismiss pursuant to Rule 12(b)(6).  Defendants ask this court to dismiss Counts I through V with prejudice because "(1) the statute of frauds bars reliance on any loan modification unless it is in writing and signed by both parties, which is not alleged; [and] (2) Defendants had no duty to enter into [a loan modification] agreement with Plaintiff, and did not act unlawfully when they declined to do so."  (Def.'s Mem. Supp. Mot. Dismiss 2).  Defendants further request that the court dismiss Count VI without prejudice because it is "rife with legal conclusions that are not entitled to the assumption of truth" and therefore "fall[s] far short of the pleading standard under [Federal Rule of Civil Procedure] 8(a)."  (<u>Id.</u> 12).

4

III.

A.  Governing Standard for Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 127 S. Ct. at 1969)); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).  Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." Twombly, 127 S. Ct. at 1965.  It is now settled that "a formulaic recitation of the elements of a cause of action will not do." Id.; Giarratano v. Johnson, 521 F.3d 298, 304 (4th Cir. 2008).

5

The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim. Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)). Instead, the opening pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 1974; Giarratano, 521 F.3d at 302.

The Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a district court to "'accept as true all of the factual allegations contained in the complaint.'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). The court is additionally required to "draw[] all

6

reasonable . . . inferences from those facts in the plaintiff's favor." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

B.  Count I: Breach of Contract

        In moving to dismiss Count I, defendants contend that "Plaintiff fails to allege the breach of any contractual obligation by BAC; BAC was under no obligation to enter into a loan modification with Plaintiff and had the express right to foreclose." (Def.'s Mem. Supp. Mot. Dismiss 2). In response, Corder maintains that although BAC was not required to grant him a loan modification, BAC's discretion under the contract was constrained by the "implied contractual duty of good faith and fair dealing." (See Pl.'s Resp. 3). Corder further asserts that BAC breached the implied duty by representing to Corder that the loan modification had been approved and that foreclosure would be postponed, and then proceeding to foreclose on the property. (See Pl.'s Resp. 3).

        This court has previously observed that West Virginia law "implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that

contract." <u>Stand Energy Corp. v. Columbia Gas Transmission</u>, 373 F. Supp. 2d 631, 644 (S.D. W. Va. 2005) (quoting <u>Hoffmaster v. Guiffrida</u>, 630 F. Supp. 1289, 1291 (S.D. W. Va. 1986)). This court has also found, however, that the West Virginia Supreme Court of Appeals has "declined to recognize an independent claim for a breach of the common law duty of good faith," and has instead held that such a claim sounds in breach of contract. <u>Doyle v. Fleetwood Homes of Virginia</u>, 650 F. Supp. 2d 535, 541 (S.D. W. Va. 2009) (citing <u>Highmark West Virginia, Inc. v. Jamie</u>, 655 S.E.2d 509, 514 (W. Va. 2007) ("it has been held that an implied covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim.")). Furthermore, "[t]he implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those set out in the contract." <u>Barn-Chestnut, Inc. v. CFM Dev. Corp.</u>, 457 S.E.2d 502, 509 (W. Va. 1995).

Corder couches his claim in breach of contract terms, asserting that BAC "breached the contract by performing in a manner inconsistent with the implied duty of good faith." (Pl.'s Resp. 5). Inasmuch as Corder seems to argue that breaching the implied covenant of good faith and fair dealing (a non-cognizable claim) necessarily constitutes breach of contract (a cognizable

claim), this is just a roundabout way of asserting an independent claim for breach of the implied covenant.  Nevertheless, the court will proceed to analyze Corder's claim as it would any other breach of contract claim.

Corder does not specify what "contract" was breached, nor does he point to any contractual provision violated by defendants.  The court concludes that Corder must be referring to either the Promissory Note (the "Note") supporting Countrywide's loan to Corder or the Deed of Trust which secured the Note, since these are the only contracts alleged to exist between the parties.

After reviewing both the Note and the Deed of Trust, it is not apparent to the court that BAC breached either contract.[2] The Deed of Trust gives defendants an unqualified right to foreclose in the event of default by the borrower.  (See Def.'s Mem. Supp. Mot. Dismiss, Ex. B, ¶ 22) ("If the default is not cured . . . Lender at its option may require immediate payment . . . and may invoke the power of sale and any other remedies

---

[2]     When ruling on a Rule 12(b)(6) motion to dismiss, the court may consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

permitted by Applicable Law.") (emphasis added).  Corder concedes
that neither contract requires defendants to pursue alternative
remedies before seeking foreclosure, and he does not dispute that
he defaulted on the loan.  (See Compl. ¶ 15) (stating that under
the Deed of Trust, "Defendant may engage in loss mitigation
efforts . . . rather than pursue foreclosure") (emphasis added)).

Relying on Virginia Vermiculite, Ltd. v. W.R. Grace &
Co., 156 F.3d 535 (4th Cir. 1998), Corder maintains that BAC's
right of foreclosure is qualified by a duty to act in good faith.
(Pl.'s Resp. 5).  Virginia Vermiculite concerned a contract
between a landowner and a mining company that granted the mining
company the right to mine the land in its "sole discretion."  156
F.3d at 541.  The district court, applying Virginia law, held
that the mining company had no implicit contractual duty to use
good faith in exercising its discretion under the contract.  Id.
at 541.  Our court of appeals reversed, holding that "it is a
basic principle of contract law in Virginia . . . that although
the duty of good faith does not prevent a party from exercising
its explicit contractual rights, a party may not exercise
contractual discretion in bad faith, even when such discretion is
vested solely in that party."  Id. at 542 (emphasis added).

Regardless of whether BAC properly exercised "its

10

explicit contractual rights" or whether it abused its
"contractual discretion" by acting in bad faith, <u>Virginia
Vermiculite</u> is inapplicable here because that case concerned
Virginia rather than West Virginia law.  This distinction is
significant inasmuch as "Virginia contract law recognizes a cause
of action for failure to exercise contractual discretion in good
faith."  <u>Virginia Vermiculite, Ltd. v. W.R. Grace & Co.</u>, 144 F.
Supp. 2d 558, 606 (W.D. Va. 2001); <u>see also</u> <u>Enomoto v. Space
Adventures, Ltd.</u>, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009)
(citing <u>Charles E. Brauer Co., v. NationsBank of Va.</u>, 466 S.E.2d
382, 386 (Va. 1996)) (listing elements for breach of implied
covenant of good faith and fair dealing claim).  As noted above,
however, West Virginia recognizes no such claim, and claims for
breach of the implied covenant must be predicated on a breach of
contract.  <u>See</u> <u>Highmark West Virginia, Inc. v. Jamie</u>, 655 S.E.2d
509, 514 (W. Va. 2007).

        Thus, because BAC was within its contractual rights in
foreclosing on the property when Corder defaulted, and because
the implied covenant "cannot give contracting parties rights
which are inconsistent with those set out in the contract,"
<u>Barn-Chestnut</u>, 457 S.E.2d at 509, Corder's claim fails as a
matter of law.  Count I is therefore dismissed with prejudice.

C.  Count II: Fraud


        Defendants present two bases for dismissal of Corder's
fraud claim: (1) "Plaintiff fails to plead fraud with
particularity as required by [Federal Rule of Civil Procedure
9(b)]," and (2) the statute of frauds precludes "reasonable
reliance" on an oral modification of a contract within the
statute of frauds.  (<u>See</u> Def.'s Mem. Supp. Mot. Dismiss 7-10).
The court considers each contention in turn.


        1.  Rule 9(b) Heightened Pleading Requirement


        Federal Rule of Civil Procedure 9(b) requires that a
party alleging fraud or mistake "state with particularity the
circumstances constituting fraud or mistake.  Malice, intent,
knowledge, and other conditions of a person's mind may be alleged
generally."  To meet this standard, a plaintiff "must, at a
minimum, describe the time, place and contents of the false
representations, as well as the identity of the person making the
misrepresentation and what he obtained thereby."  <u>United States</u>
<u>ex rel. Wilson v. Kellog Brown & Root, Inc.</u>, 525 F.3d 370, 379
(4th Cir. 2008) (quoting <u>Harrison v. Westinghouse Savannah River</u>
<u>Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999) (internal quotation marks

                              12

omitted)).

        In addition to the factual allegations discussed above,
(supra Part I), Corder's fraud claim consists of the following
allegations:

    23.  In or around March of 2010 Defendant servicer [BAC]
         represented to Plaintiff that it was providing him
         with a loan  modification rather than pursuing
         foreclosure.

    24.  Defendant's representation was false.

    25.  Defendant's misrepresentations to Plaintiff were
         knowing, reckless, and/or intentional.

    26.  Defendant's misrepresentations were material.

    27.  Plaintiff reasonably relied on Defendant's
         misrepresentations and awaited the promised loan
         modification.

    28.  Defendant intentionally foreclosed on Plaintiff's
         home despite its promise of an affordable loan
         modification and despite its promise that it would
         not foreclose, inflicting significant damages on
         the Plaintiff.

    29.  Plaintiff's reliance on Defendant's
         misrepresentations was thus to his detriment.

(Compl. ¶¶ 23-29).

        Corder's fraud claim appears to meet the Rule 9(b)
pleading standard.  The complaint specifies the approximate date
the alleged misrepresentation was made (March 2010), identifies
which defendant made the representation (BAC), conveys the

13

content of the alleged misrepresentation (Corder would be granted

a loan modification and BAC would not pursue foreclosure), and

alleges scienter generally, which is permitted by Rule 9(b).

Although Corder's fraud claim lacks specificity in some

respects, our court of appeals has made clear that "[a] court

should hesitate to dismiss a complaint under Rule 9(b) if the

court is satisfied (1) that the defendant has been made aware of

the particular circumstances for which she will have to prepare a

defense at trial, and (2) that plaintiff has substantial

prediscovery evidence of those facts."  Harrison, 176 F.3d at

784.  Based on Corder's complaint, BAC has "been made aware of

the particular circumstances for which [it] will have to prepare

a defense at trial," and it appears that Corder has sufficient

prediscovery evidence of those facts.  Id.  The court thus

declines to dismiss Corder's fraud claim on Rule 9(b) grounds.

### 2.  Statute of Frauds

Defendants also contend that "West Virginia law bars

claims based upon a verbal promise or agreement related to real

estate pursuant to the statute of frauds," and that "[t]he

statute of frauds precludes Plaintiff from alleging 'reasonable

14

reliance,' which is an element required to state a claim for fraud (Count II)." (Def.'s Mem. Supp. Mot. Dismiss 7-8). Corder does not respond to these contentions.

It is, of course, well established in West Virginia that the statute of frauds prevents enforcement of certain oral contracts "unless the conditions expressed in W. Va. Code, 36-1-3, are met." Timberlake v. Heflin, 379 S.E.2d 149, 153 (W. Va. 1989). For example, West Virginia Code § 36-1-3 requires "an agreement for the sale or lease of land to be in writing." JSK Realty Co., v. New Plan Realty Trust, 9 Fed. App'x 89, 95 (4th Cir. 2001) (citing Holbrook v. Holbrook, 474 S.E.2d 900, 904 (W. Va. 1996)); W. Va. Code, § 36-1-3. Accordingly, the statute would preclude Corder's claim inasmuch as he seeks "enforcement of [an] oral contract" concerning "the sale or lease of land." See id.

In analyzing Corder's fraud claim, the court recognizes that it:

> [M]ust be careful to distinguish between actual fraud and artfully pleaded breach of contract claims . . . fraud cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention, and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events.

White v. National Steel Corp., 938 F.2d 474, 478 (4th Cir. 1991)

15

(quoting <u>Janssen v. Carolina Lumber Co.</u>, 73 S.E.2d 12, 17 (W. Va. 1952)).  Notably, the West Virginia Supreme Court of Appeals recognizes an exception to the bar on promissory fraud when "the non-existence of the intention to fulfill the promise at the time it was made is shown."  <u>Croston v. Emax Oil Co.</u>, 464 S.E.2d 728, 732 (W. Va. 1995).

The crux of Corder's fraud allegation is that "Defendant servicer [BAC] represented to Plaintiff that it was providing him with a loan modification rather than pursuing foreclosure," that BAC nonetheless foreclosed on Corder, and that BAC's "misrepresentations to Plaintiff were knowing, reckless, and/or intentional."  (Compl. ¶¶ 23-28).  Drawing all inferences in the plaintiff's favor, as the court must on a 12(b)(6) motion to dismiss, the court construes Corder's allegations to assert that defendant had "no intention to fulfill the promise at the time it was made."  <u>Croston</u>, 464 S.E.2d at 732.  Viewed in this light, Corder's fraud claim is premised not on the breach of an alleged oral contract concerning the sale or lease of land, but on defendant's knowingly false statements of material fact. Thus, under West Virginia law, Corder's fraud claim is precluded neither by the statute of frauds nor the bar on promissory fraud.

The court also rejects defendants' contention that

"[t]he statute of frauds precludes Plaintiff from alleging
'reasonable reliance,' which is an element required to state a
claim for fraud (Count II)."  Defendants cite no authority
directly supporting this proposition.  Instead, defendants cite
two unpublished opinions in which courts rejected promissory
estoppel claims based on alleged oral modifications of contracts.
See Schuhart v. Chase Home Fin., No. C-05-385, 2006 WL 1897263,
at *4 (S.D. Tex. July 10, 2006); Ajami v. Indymac Mortgage
Servs., 2009 WL 3874680, at *8 (E.D. Mich. Nov. 13, 2009).  Since
these cases involved dismissal of promissory estoppel rather than
fraud claims, they are irrelevant to the case at hand.

Based on the foregoing analysis, defendants' motion to
dismiss Count II is denied.

D.  Count III: Negligent Misrepresentation

Just as with Count II (Fraud), defendants assert that
Count III (Negligent Misrepresentation) should be dismissed
because the statute of frauds precludes Corder from "reasonably
relying" on any oral representations allegedly made by BAC.
(Def.'s Mem. Supp. Mot. Dismiss 7-8).  Inasmuch as the court has
rejected that contention in the context of Count II, the same

17

reasoning applies to Count III.  Accordingly, the statute of
frauds does not bar Corder's negligent misrepresentation claim.

Defendants also maintain that Corder's negligent
misrepresentation claim fails because BAC had no duty to enter
into a loan modification agreement with Corder.  (Def.'s Mem.
Supp. Mot. Dismiss 5).  This argument simply misses the mark.
Corder does not allege that BAC had a duty to enter into a loan
modification agreement with him.  Rather, he contends that BAC
had a duty "to provide him with accurate information about the
status of his loan account," and that BAC breached that duty by
making negligent misrepresentations regarding the status of
Corder's loan modification and BAC's decision to foreclose on the
property.  (Compl. ¶¶ 31-34).  In other words, while BAC was not
obligated to modify the loan, it was obligated, Corder asserts,
to make truthful representations in its dealings with Corder.
Defendants' contentions mischaracterize Corder's allegations and
therefore must be rejected.  Accordingly, defendants' motion to
dismiss Count III is denied.

E.  Count IV: Estoppel


        Defendants move to dismiss Corder's estoppel claim,
first mistakenly contending that "Plaintiff fails to state a
claim because estoppel is a remedy, not an independent action."
(Def.'s Mem. Supp. Mot. Dismiss 10).  To the contrary, West
Virginia law does recognize a claim for equitable estoppel.  See
Harshbarger v. CSX Transp., Inc., 484 F. Supp. 2d 515, 517 (S.D.
W. Va. 2007) (citing Cleaver v. Big Arm Bar & Grill, Inc.,
502 S.E.2d 438 (W. Va. 1998)).  Defendants next contend that "BAC
had no obligation to offer a loan modification, had the right to
foreclose pursuant to the Note and Deed of Trust, and Plaintiff
concedes that no contract to modify the loan was formed."
(Def.'s Mem. Supp. Mot. Dismiss 10).  Defendants further assert
that "any such agreement is unenforceable as a matter [of] law
pursuant to the statute of frauds because Plaintiff does not and
cannot allege that it is evidenced by a writing signed by both
parties."  (Id.).  Because Corder's equitable estoppel claim does
not seek to enforce any contractual agreement between the
parties, defendants' contentions are neither disputed nor
material to Corder's claim and must be rejected.

        To prove equitable estoppel, the West Virginia Supreme

19

Court of Appeals has stated:

> [1] [t]here must exist a false representation or a
> concealment of material facts; [2] it must have been made
> with knowledge, actual or constructive of the facts; [3]
> the party to whom it was made must have been without
> knowledge or the means of knowledge of the real facts;
> [4] it must have been made with the intention that it
> should be acted on; and [5] the party to whom it was made
> must have relied on or acted on it to his prejudice.

Folio v. City of Clarksburg, 655 S.E.2d 143, 148 (W. Va. 2007)

(quoting Syl. Pt. 6 Stuart v. Lake Washington Realty Corp., 92

S.E.2d 891 (W. Va. 1956)).

In support of his equitable estoppel claim, Corder's
complaint alleges: (1) BAC's agents represented to Plaintiff that
Defendant would modify plaintiff's loan rather than pursue
foreclosure; (2) in reliance on defendant's representations,
plaintiff did not make payments on the loan pending receipt of
the modification plan, but did pay an "initiation" fee of $1,772;
(3) plaintiff had a reasonable expectation that defendant would
provide him with a loan modification and not foreclose on his
home, as promised; and (4) plaintiff was injured by his reliance
on defendant's representations.  Corder also incorporates by
reference all of the preceding allegations in his complaint.

The court liberally construes the complaint's
allegations as asserting that BAC agents made knowingly false

statements of material fact to Corder about pursuing a loan modification instead of foreclosure, that Corder had no means of knowing that BAC -- despite its assurances to the contrary -- intended to foreclose rather than permit a loan modification, that BAC made these misrepresentations intending for Corder to pay the initiation fee, and that Corder did rely on the misrepresentations to his detriment by paying the initiation fee. In short, Corder has sufficiently pled a claim for equitable estoppel.  The court thus denies defendants' motion to dismiss Count IV.

## F.  Count V: Equitable Relief

In Count V, Corder alleges: (1) "Defendants have and have had the ability to enforce their right to repayment of the debt through means other than the forfeiture of Plaintiff's home[;]" and (2) "Defendants have refused to exercise their rights to repayment through alternative means, such as through the promised loan modification, and instead have wrongfully foreclosed on Plaintiff's home."  (Compl. ¶¶ 45-46).  Defendants respond by contending that "BAC is not required by contract or equity to pursue alternatives to foreclosure."  (Def.'s Mem. Supp. Mot. Dismiss 11).

Count V is only a request for equitable relief --
it does not assert a cause of action.  Equitable relief is
dependent on the success of the other claims in Corder's
complaint, and the court may grant such relief if Corder
succeeds on some of his claims.  The court therefore
declines to dismiss Count V.


G.  Count VI: Unconscionable Contract


Defendants move to dismiss Count VI without prejudice,
contending that Corder's claim for unconscionability is "rife
with legal conclusions that are not entitled to the assumption of
truth" and that the claim therefore "fall[s] far short of the
pleading standard under [Federal Rule of Civil Procedure] 8(a)."
(Def.'s Mem. Supp. Mot. Dismiss 12).  In response, Corder
maintains he has "adequately plead" that the original loan
agreement was induced by unconscionable conduct and contained
unconscionable terms.  (Pl.'s Resp. 10).

West Virginia Code § 46A-2-121 provides a remedy for
consumers who have entered into consumer loans that contain
unconscionable terms or were induced by unconscionable conduct.
It states in pertinent part:

22

> (1) With respect to a transaction which is or gives rise
> to a consumer credit sale, consumer lease or consumer
> loan, if the court as a matter of law finds:
>
> (a) The agreement or transaction to have been
> unconscionable at the time it was made, or to have been
> induced by unconscionable conduct, the court may refuse
> to enforce the agreement, or
>
> (b) Any term or part of the agreement or transaction to
> have been unconscionable at the time it was made, the
> court may refuse to enforce the agreement, or may enforce
> the remainder of the agreement without the unconscionable
> term or part, or may so limit the application of any
> unconscionable term or part as to avoid any
> unconscionable result.

W. Va. Code § 46A-2-121.

In determining unconscionability, a court "must focus on the relative positions of the parties, the adequacy of the bargaining position, and the meaningful alternatives available" to the plaintiff.  Art's Flower Shop, Inc. v. Chesapeake and Potomac Tel. Co., 413 S.E.2d 670, 675 (W. Va. 1991).  "An analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole."  Orlando v. Finance One of West Virginia, Inc., 369 S.E.2d 882, 885 (W. Va. 1988).  A bargain may be unconscionable if there is "gross inadequacy in bargaining power, together with terms unreasonably favorable to the stronger party."  Troy Mining Corp. v. Itmann Coal Co., 346 S.E.2d 749, 753 (W. Va. 1986).

23

Gross inadequacy in bargaining power may exist where consumers
are totally ignorant of the implications of what they are
signing, <u>Board of Educ. of Berkeley County v. W. Harley Miller,
Inc.</u>, 236 S.E.2d 439, 447 (W. Va. 1977), or where the parties
involved in the transaction include a national corporate lender
on one side and unsophisticated, uneducated consumers on the
other.  <u>Arnold v. United Companies Lending Corp.</u>, 511 S.E.2d 854
(W. Va. 1998).

Corder makes the following factual allegations in
support of his unconscionable contract claim:

48. The Defendant has engaged in a pattern of predatory
lending practices to make illegal loans in order to
transfer the home equity from homeowners to the
Defendant.

49.  The Plaintiff is an unsophisticated consumer and
did not understand the details of the transaction.

50. (a) The loan that is the subject of this action was
closed in a hurried manner, without adequate
explanation to the Plaintiff of what he was
signing.
(b) The loan was induced by an inflated appraisal.

51. The loan contains several substantively unfair
terms, including but not limited to the fact that
the loan far exceeds the market value of the
Plaintiffs home.

52. The Defendants have a pattern of intentionally
inflating the market value of homes to support
predatory loans that exceed the market value of the
borrowers' homes.

24

53.   The loan issued the Plaintiff was unconscionable, under all circumstances alleged, at the time it was made and/or was induced by unconscionable conduct, and therefore was unenforceable.

(Compl. ¶¶ 48-53).

Upon separating the complaint's well-pleaded factual allegations from its recitation of legal elements and conclusions, it appears that Corder has not alleged sufficient factual matter to sustain his unconscionable contract claim.   In support of his assertion that the original loan agreement was induced by unconscionable conduct, Corder alleges that he is "an unsophisticated consumer," and that the loan was "induced by an inflated appraisal."   But Corder offers no facts showing how he is "unsophisticated," nor does the complaint specify how or by what amount the appraisal was "inflated."   These are nothing more than conclusory statements that are not entitled to the assumption of truth at the Rule 12(b)(6) stage.   See Iqbal, 129 S. Ct. at 1951.   Further, Corder's repeated allegations regarding defendants' pattern of predatory loan practices bear little, if any, relevance to the unconscionability of his particular loan agreement.   And the alleged fact that the loan "far exceeds" the market value of the Plaintiffs home does not, by itself, support the inference that the loan terms were unconscionable at the time of the transaction (especially if Corder means that the loan

25

exceeds the <u>current</u> market value of the home, which could just be a result of declining property values).  Inasmuch as Corder's unconscionable contract claim does not state a claim to relief that is "plausible on its face," <u>Twombly</u>, 127 S. Ct. at 1974, defendants' motion to dismiss Count VI without prejudice is granted.

IV.  Conclusion

Based on the foregoing, the court ORDERS as follows:

1.   That defendants' motion to dismiss be, and it hereby is, granted with respect to plaintiff's breach of contract claim (Count I).

2.   That defendants' motion to dismiss be, and it hereby is, denied with respect to plaintiff's fraud claim (Count II), negligent misrepresentation claim (Count III), estoppel claim (Count IV), and request for equitable relief (Count V).

3.   That defendants' motion to dismiss plaintiff's unconscionable contract claim (Count VI) without prejudice be, and it hereby is, granted.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: January 26, 2011

John T. Copenhaver, Jr.
United States District Judge